## Commonwealth v. Bachman Brothers, Inc.

*Gerald A. Gleeson, Jr.* and *Frank S. Deming*, for appellant.

*Edward Friedman*, Attorney General, and *Eugene J. Anastasio*, Deputy Attorney General, for Commonwealth.

Swope, P. J., April 19, 1967.—This is an appeal by Bachman Brothers, Inc, hereinafter called taxpayer, from an order of the Board of Finance and Revenue dated November 2, 1962, sustaining the action of the Department of Revenue and Department of the Auditor General in refusing taxpayer's petition for reassessment of its 1960 capital stock tax liability under the Act of June 1, 1889, P. L. 420, as amended, 72 PS §1871. Pursuant to the provisions of the Act of April 22, 1874, P. L. 109, 12 PS §688, the parties entered into a stipulation for the trial of the case without a jury.

The pertinent facts, as set out in the stipulation of facts, are as follows:

Taxpayer is a corporation organized under the laws

of the Commonweatlh of Pennsylvania on June 11, 1924, with its principal office located in Philadelphia, Pa. In settling taxpayer's 1960 capital stock tax liability, the Department of Revenue applied a taxable asset ratio of \$90,821/\$1,500,307 to a valuation of \$800,000. The numerator of the taxable asset ratio (\$90,821) represented the average value of the common stock of the American Telephone and Telegraph Company owned by taxpayer during the year 1960. The inclusion of this asset in the numerator of the fraction represents a departure of the taxing departments in the treatment of taxpayer's other assets, which are generally accorded the benefit of the so-called "manufacturing exemption" under the tax act in question. The Commonwealth contends that this asset does not meet the statutory requirements of the "manufacturing exemption", since it is not invested in or actually and exclusively employed in carrying on manufacturing.

The stock in question was acquired pursuant to an agreement between taxpayer and the Independent Plastic Workers' Union, under which taxpayer set up a self-insured fund to provide pension payments for members of the union who had a record of at least 20 years' continuous service with taxpayer. For the year 1960, the aforesaid fund consisted of:

| | |
|---|---|
| U. S. securities | \$30,000 |
| Stock of Pennsylvania corporations | 13,428 |
| 972 shares of American Telephone and Telegraph Company stock, a foreign corporation | 90,821 |

The stock of the Pennsylvania corporations and U.S. securities are exempt from capital stock taxation for statutory reasons other than the manufacturing exemption.

The shares of stock of American Telephone and Telegraph Company which serve to finance the pension plan are physically maintained in a separate safety deposit box, apart from the general assets of the corporation. Further, for accounting purposes, they are carried on the balance sheet of taxpayer as a segregated item under the heading "pension fund". The pension plan does not restrict the use of said securities by taxpayer. Income received on the securities is listed on the general income statement of taxpayer as "other income", and benefits paid to employes under the pension plan are listed on the general income statement as "selling and administrative expenses"—"pensions".

During the year in question, income from all the assets of the fund totalled $4,475.16, whereas benefits paid to employes under the pension plan totalled $3,308. The difference of $1,467.76 was credited to the profit and loss statement of the books of taxpayer.

The question presented is whether the facts as outlined above meet the requirements set out in the exemption language of the tax act so as to require exemption of taxpayer's stock holdings. Section 21(a) of the Act of June 1, 1889, P. L. 420, as amended, 72 PS §1871, provides as follows:

". . . That after . . . [1957] the provisions of this section shall not apply to the taxation of the capital stock of corporations, . . . organized for manufacturing . . . , *which is invested in and actually and exclusively employed in carrying on manufacturing . . .* within the State . . . , but every corporation, . . . organized for the purpose of manufacturing . . . shall pay the State tax of five mills herein provided, upon such proportion of its capital stock, if any, *as may be invested in any property or business not strictly incident or appurtenant to the manufacturing . . .* business, . . . , it being the object of this proviso to relieve from State

taxation only so much of the capital stock as is invested purely in the manufacturing . . . plant and business". (Italics added.)

Can it be said that the American Telephone and Telegraph stock held by taxpayer for the above purpose is "invested in and actually and exclusively employed in carrying on manufacturing?" We think not.

At the outset, we assume, without deciding, that the application of capital assets to meet the pension liability of taxpayer would be within the term "carrying on manufacturing", as used in the statute for purposes of exemption. At first blush, it would then appear that the $90,821 of stock was "actually and exclusively" employed in carrying on manufacturing. Upon closer analysis of the factual situation, however, it becomes apparent that the stock itself was not so employed, but that *only the income produced by the stock* was in any relevant way employed in the manufacturing business. In actuality, the $90,821 of stock represented assets which were effectively "withdrawn" from the manufacturing business and in no way was this "principal" amount employed in taxpayer's business.

Although not on all fours with the present factual situation, this court's decision in Commonwealth v. McClintic-Marshall Construction Co., 25 Dauph. 210 (1922), lends support to the above conclusion. In that case, the taxpayer had invested $4,600 in 40 shares of stock of the United States Steel Company to be used to settle a pending liability arising out of an accident. From a reading of the opinion, it seems clear that *the stock itself* was purchased to be later resold for the purchase price to satisfy the expected liability. Purchase of the shares necessarily involved the withdrawal of capital from the manufacturing business. Holding that the stock was in no sense "employed" in the manufacturing business, and that it was clearly

withdrawn from the manufacturing business, the court denied exemption. The court noted that "When the purpose for which the stock was purchased failed, it could have been resold and the cash employed in manufacturing; but, for good business reasons, it was not so treated": Id. at 218. Under the present facts we have, as in McClintic, a withdrawal of capital from the business and investment in stock unrelated in any way to taxpayer's manufacturing business. It is not contended by taxpayer that any part of the principal of the stock was to be resold and the proceeds used in the manufacturing business. The mere fact that the assets so withdrawn produce a certain amount of income and that such income is used to meet taxpayer's manufacturing needs does not qualify the principal, i.e., the stock itself, as an asset "employed" in manufacturing. There may be situations in which funds held as working capital may be invested in short term interest bearing securities and still qualify for exemption. The mere fact that they are held in a form other than cash does not constitute a withdrawal of such assets from the manufacturing business. Such is not the situation here, however, where $90,821 is withdrawn from the business and invested in securities which are not intended to be and never are converted into cash or other assets to be used in the manufacturing business. Mere holding of an income producing asset, even though such income is applied to the manufacturing business, does not render such asset itself "employed" in taxpayer's manufacturing business, as required by the statute.

If the result contended for by taxpayer were sustained, it would be a very simple matter for a corporation to avoid the burden imposed by the capital stock tax on non-manufacturing assets by investing all funds not used in carrying on its manufacturing operations in non-manufacturing activities and then applying

the income derived therefrom to its manufacturing operations. If, instead of purchasing American Telephone and Telegraph stock, taxpayer in this case had invested $90,821 in a non-manufacturing business, could it be contended that the assets invested in such a business are within the "manufacturing exemption" simply because the income of the non-manufacturing business is applied to the manufacturing business of taxpayer? We do not think the legislature intended such a result as this which could lead to widespread circumvention of the capital stock tax.

For the foregoing reasons, we make the following

### ORDER

And now, April 19, 1967, the within appeal is denied and the action of the Board of Finance and Revenue dated November 2, 1962, is sustained. Judgment is directed to be entered against Bachman Brothers, Inc. and in favor of the Commonwealth in the amount of $242.14, with interest as allowed by law. Costs of this appeal are to be borne by Bachman Brothers, Inc. This order shall become final within 20 days from the date hereof unless exceptions be filed theretofore. The prothonotary is directed to give notice of this order to the parties or their counsel forthwith.